# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL MARQUEZ, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 13-cv-3278 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DEMETRIUS JACKSON, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Demetrius Jackson's motion for summary judgment [95]. For the reasons set forth below, Defendant's motion [95] is denied. This case is set for further status on September 28, 2016 at 10:00 a.m. to discuss trial dates and the possibility of settlement.

**I.     Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements, construing the facts in the light most favorable to the nonmoving party—here, Plaintiff.[1]

At all relevant times, Defendant Demetrius Jackson was employed as a Lieutenant Police Officer by the United States Department of Veterans Affairs. On April 29, 2013, Defendant was off-duty and was driving his personal vehicle on Chicago's west side when he ran into the back of Plaintiff's vehicle. After the collision, Defendant kept driving. Plaintiff tried to pull alongside Defendant's vehicle to get him to pull over so that the two could exchange insurance information. Over the next half block, Defendant kept slamming on his brakes and would not

---

[1] Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule permits a movant to file up to 80 separately-numbered statements of undisputed facts. L.R. 56.1(a)(3). The rule also requires the nonmovant to file a concise response to the movant's statement of facts setting forth "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A).

pull over. Shortly thereafter, Defendant collided with Plaintiff's vehicle a second time. Again, Defendant drove off (on his way to the police station, he says), giving Plaintiff the middle finger as he pulled away. Plaintiff called 911 as he continued to pursue Defendant, telling the operator:

> I'm not going to let this guy go. No. He cut me off. He's ramming me. I'm not going to let him go. * * * He's trying to get away from me. * * * I'm right behind him. * * * I'm not letting him go. * * * If I have to get out of the car and do something myself, I will. I'm going to fuck this guy up. I'm not even playing. * * * I'm not going to stop following him.

[111-1, ¶ 10.] When Defendant stopped at a red light, Plaintiff got out of his car and approached Defendant, yelling "why didn't you stop?" In response, Defendant exited his car—wearing street clothes and his police badge—and drew a personal firearm, placing the muzzle of the gun on Plaintiff's forehead. Plaintiff raised his hands in the air. Defendant identified himself as a police officer, displayed his badge, and told Plaintiff to "back off." At some point thereafter, Plaintiff returned to his vehicle to call 911. Both parties left the scene, driving independently to the nearby Chicago Police Station. Plaintiff was charged with assault, and was found not guilty at trial.

In his third amended complaint [80], Plaintiff alleges that Defendant unlawfully seized him in violation of the Fourth Amendment, and he also brings state law claims of negligence, battery, and malicious prosecution. Now before the Court is Defendant's motion for summary judgment [95] as to Plaintiff's Fourth Amendment claim.

II.     **Legal Standard**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendant seeks summary judgment on the sole federal claim in Plaintiff's third amended complaint (*i.e.*, a Fourth Amendment unlawful seizure/excessive force claim brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)), arguing that (a) Defendant did not act under the color of law, and (b) even if he did, his acts did

not violate the Fourth Amendment. Defendant then asks the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining claims, which all arise under state law.

### A. Color of Law

Plaintiff brings his constitutional tort claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which allows individuals to obtain relief for constitutional violations committed by federal employees by suing them in their individual capacity. See *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002). By alleging a constitutional violation pursuant to *Bivens*, Plaintiff has invoked this Court's federal question jurisdiction under 28 U.S.C. § 1331 and, consequently, supplemental jurisdiction over Plaintiff's state tort claims pursuant to 28 U.S.C. § 1367(a).

Defendant's primary argument is that he *was not* acting under color of law during his altercation with Plaintiff. If true, that would mean that the Court lacks subject matter jurisdiction over Plaintiff's federal *Bivens* claim. If that's the case, Defendant argues that the Court should decline to exercise supplemental jurisdiction over the remaining state claims.

"Not every action taken by a [federal] official is considered to have occurred under color of [federal] law." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citing *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001)).[2] An action is taken under color of federal law "if it involves a '[m]isuse of power, possessed by virtue of [federal] law and made possible only because the wrongdoer is clothed with the authority of [federal] law." *Id.* (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)). The analysis "depends 'largely on the nature of the specific acts the [federal actor] performed, rather than on

---

[2] Many of the cases cited herein relate to the conduct of state actors in § 1983 cases, not the conduct of federal actors in *Bivens* cases. But it is well-established that actions under *Bivens* and § 1983 generally "are identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens*)." *Bieneman v. City of Chicago*, 864 F.2d 463, 469 (7th Cir. 1988) (citing *Carlson v. Green*, 446 U.S. 14, 24–25 (1980)).

4

merely whether he was actively assigned at the moment to the performance of [his federal] duties." *Id.* (quoting *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995); see also *Latuszkin v. City of Chicago*, 250 F.3d 502, 505–06 (7th Cir. 2001) ("The important consideration * * * in determining whether an officer is acting under color of * * * law is the nature of the specific act performed.").

Courts consider numerous factors in deciding whether a governmental actor's conduct was performed under color of law. Some factors are apparent to the plaintiff at the time of the incident, such as whether the defendant displayed a badge, wore a uniform, drove a marked vehicle, or identified himself or herself as a state or federal employee. See, *e.g.*, *Pickrel*, 45 F.3d at 1118 (wearing a police uniform, driving a police vehicle, and displaying a badge were all signs of state authority); *Hill v. Barbour*, 787 F. Supp. 146, 149 (N.D. Ill. 1992) ("A policeman's badge is the principal means of identifying himself as an official of the government."); *Plaats v. Barthelemy*, 2016 WL 2642056, at *3 (7th Cir. May 4, 2016) (officers entitled to summary judgment on "color of law" issue where they "attempted no arrest, wore no uniforms, and never identified themselves as police officers"). Also relevant are factors that might not be readily apparent to the plaintiff at the time of the incident, such as whether the defendant was on or off duty, whether a piece of equipment used in the incident (such as a firearm) was government issued or privately owned, or whether the defendant's conduct was in some way related to his or her official duties. *Davis v. Murphy*, 559 F.2d 1098, 1101 (7th Cir. 1977) (off-duty officers acted under color of law where, *inter alia*, they carried their police badges and guns and were effectively on duty because Milwaukee Police Department regulations required them "to be always subject to duty"); *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Ultimately, the inquiry is a fact-dependent one, where no one factor is decisive. See, *e.g.*, *Gibson v. City of*

*Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A] mere assertion that one is a state officer does not necessarily mean that one acts under color of law." (quoting *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976))); *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) ("Of course, being off-duty does not preclude him from acting under color of state law.").

Here, there are factors that lean in both directions. On one hand, Defendant was in a private vehicle, he was not wearing his police uniform, he was not on duty, and—according to Defendant—he lacked statutory authority to engage in police activity outside of the confines of the Department of Veterans' Affairs. See 38 U.S.C. § 902 (Veterans' Affairs officers are permitted to engage in law enforcement "on Department property"). On the other hand, Defendant displayed his badge, pulled out a firearm (albeit a personal one), and, most importantly, identified himself as a police officer. While there is evidence on both sides of the scale, the Court concludes that there were sufficient indicia of federal action—including Defendant's presentation of a badge, self-identification as a police officer, and display of law enforcement power—to preclude summary judgment in Defendant's favor on this issue.

Defendant also argues that not only was he acting outside of his geographical jurisdiction, he was also acting beyond the scope of his authority as a Veterans' Affairs officer—that is, that his actions were not related to the duties of his office. See *Wilson*, 624 F.3d at 392 (city councilman's act of savagely beating a mechanic was not under color of law because it was not "related in some way to the performance of the duties of the state office," which were purely legislative). In support of this argument, Defendant cites *McCloughan v. City of Springfield*, 208 F.R.D. 236, 243 (C.D. Ill. 2002), where a private citizen was not acting under color of law when making a citizen's arrest. [112, at 5–6.] The theory in *Wilson* and *McCloughan* is that one cannot misuse power that one does not possess. This theory also proved successful in a case where two

firefighters flashed their badges and claimed to be "the law in Oak Lawn" before brutally injuring the plaintiffs. *Vanderlinde v. Brochman*, 792 F. Supp. 52, 53–54 (N.D. Ill. 1992). The court concluded that the firefighters were not acting under color of law because they were not misusing any power that they "*possessed* by virtue of state law," because law enforcement was not a part of their job definition. *Id.* at 55 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

This defense does not apply here. While Veterans' Affairs officers are an atypical branch of law enforcement officers, they still possess the power to carry guns and enforce laws. As such, Defendant is alleged to have misused power that he *possessed* by virtue of federal law. While Defendant may not have possessed the power to enforce laws while off-duty or beyond federal property, law enforcement is still a part of his job definition. This is categorically different than the misuses of power in *Vanderlinde* and *Wilson*, where the firefighters and the city councilman misused power that they *did not* possess—*i.e.*, firefighters and aldermen don't enforce laws. Defendant's arguments to the contrary are unavailing. Defendant's motion for summary judgment on the "color of law" issue therefore must be denied.

**B.     Fourth Amendment**

Defendant says that even if he acted under color of law, he is still entitled to summary judgment on Plaintiff's Fourth Amendment claim because (a) Plaintiff was never seized within the meaning of the Fourth Amendment and (b) Defendant's use of force was reasonable.

In order to establish that Defendant's actions constituted a "seizure" as contemplated by the Fourth Amendment, Plaintiff "must demonstrate, from all the circumstances surrounding the incident, that a reasonable person in such a situation would have believed that he was not free to leave." *Belcher v. Norton*, 497 F.3d 742, 748 (7th Cir. 2007) (citing *United States v. Mendenhall*,

7

446 U.S. 544, 554 (1980)). To do so, Plaintiff must show that Defendant physically touched him or that he yielded to Defendant's show of authority. *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991)). Plaintiff must also show that Defendant's seizure was intentional. *Id.* (citing *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994)).

Defendant argues that he did not seize Plaintiff because he never successfully limited Plaintiff's movement. [97, at 10–11.] Defendant relies on *White v. Williams*, 1998 WL 729643, at *4 (N.D. Ill. Oct. 16, 1998), where an officer—with his gun drawn and his badge on display—approached an individual, but because the individual never actually stopped (he got into his car and drove away), his "freedom of movement was not inhibited by [the defendant's] actions," and thus there was no Fourth Amendment seizure. But Defendant's argument is directly contradicted by Plaintiff's factual averments. Specifically, Plaintiff alleges that he "raised his hands upward in a surrendering position as soon as [he] saw Defendant Jackson draw his gun," and that he "did not feel free to leave, as his hands were raised in the air while [Defendant] pointed the gun at Plaintiff's forehead" because he "was afraid that the Defendant was going to shoot and kill him." [111-2, ¶¶ 13, 20–21.] Plaintiff does admit that, at some point, he "became frightened and then ran to his vehicle to call 911," [111-2, ¶ 22], but that does not erase the period of time when Plaintiff allegedly surrendered to Defendant's show of authority.

That being said, the Seventh Circuit has held that an alleged seizure that "lasted only seconds" was not "long enough to count as a seizure." *United States v. Broomfield*, 417 F.3d 654, 656–57 (7th Cir. 2005). In trying to delineate the requisite duration of a qualifying "seizure," the Seventh Circuit gave an example where an officer stops a woman to question her about a suspect on the loose. The court noted that although asking a question to the pedestrian would, in fact, bring the pedestrian to a halt, "the interference with personal liberty is too slight

8

to activate constitutional concerns." *Id.* at 656. By contrast, the court said that if the pedestrian had "told the officer to bug off and he had insisted that she remain and answer his questions, the innocuous stop would become a seizure," although likely a reasonable one. *Id.* Even assuming that the only relevant distinction between these two hypothetical encounters is their respective duration (as opposed to the more-likely distinction that the second encounter involves a show of authority, since "[a] seizure does not occur simply because a police officer approaches an individual and asks a few questions," *Florida v. Bostick*, 501 U.S. 429, 434 (1991)), the encounter here was of sufficient duration to defeat Defendant's motion for summary judgment on this issue. Specifically, Plaintiff testified in his deposition that Defendant held a gun to his head for "about 30 seconds, maybe a minute," [96-2, at 9], and that following this encounter, Defendant pulled a knife on Plaintiff, which kept him immobilized for an additional period of time before he finally ran to his car to call 911. While Plaintiff's estimations admittedly are guesses because he "ha[d] no sense of time at that point" [96-2, at 9], the overall duration of the stop would have been at least as long as the qualifying "seizure" in the Seventh Circuit's hypothetical in *Broomfield*, rendering Defendant's argument unavailing.

Defendant's second argument is that Plaintiff has failed to show that the seizure was unreasonable. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). Whether a seizure is reasonable depends on "the context within which [the] search takes place." *Doe v. Heck*, 327 F.3d 492, 510 (7th Cir. 2003) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985)); see also *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995) ("What expectations are legitimate [under the Fourth Amendment] varies, of course, with context, depending, for example, upon whether the individual asserting the privacy interest is at

9

home, at work, in a car, or in a public park." (internal citation omitted)). Ultimately, though, "[t]he question whether the seizure was unreasonable under the Fourth Amendment depends on whether it was objectively reasonable, judged from the perspective of a reasonable officer on the scene." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). "The proper application of this test requires an analysis of the facts and circumstances of the case, 'including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Weaving his way through the disputed facts, Defendant potentially could piece together a narrative showing that his actions were objectively reasonable (*e.g.*, that he was defending himself against an unknown assailant pursuing him in a public street). But construing the facts in the light most favorable to Plaintiff, as the Court must at the summary judgment stage, there are ample facts (both agreed and disputed) creating a triable issue as to whether Defendant's use of force in seizing Plaintiff was reasonable. For example, a jury could conclude that Defendant's use of a firearm (and potentially a knife) to threaten a Plaintiff's life in the middle of a public street, after having collided with Plaintiff's vehicle twice and fleeing the scene of the accident on both occasions, was unreasonable. Defendant's motion for summary judgment therefore must be denied.

  **C.** **Supplemental Jurisdiction**

Because the Court has denied Defendant's motion for summary judgment as to Plaintiff's federal claim, the Court has no cause to address Defendant's secondary request that the Court decline to exercise supplemental jurisdiction over Plaintiff's claims arising under state law.

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [95] is denied. This case is set for further status on September 28, 2016 at 10:00 a.m. to discuss trial dates and the possibility of settlement.


Dated: September 9, 2016                          _____
                                                  Robert M. Dow, Jr.
                                                  United States District Judge